Oh, there he is. He's feeling okay? Okay, we'll now do 23-3152, U.S. versus Drake's. Mr. Hunsmeier? Mr. Hunsmeier, the connection is not great, so we're missing occasional words, so I'll ask you to speak slower than normal, and maybe we won't miss as many words. Okay. Yeah, I'm sorry. I know this is frustrating. So, essentially, there's two sentencing-related errors in this case. One involves Section 3582A, which is the statute that lists the punishments that are available in federal court, but that statute also says that rehabilitation or correctional treatment cannot be used to impose or lengthen a sentence. So here, the district court violated that statute's word provision when it's cited correctional treatment, rehabilitation, as one of the reasons to vary upward in this case. And we know that because, well, a few things, but primarily, the district court told us it did this in the written statement. For instance, the box was checked on the page for the upper variance, and that's consistent with the statements made by the district court in the sentencing hearing, where the district court talked about how Mr. Grayson had drug problems, and then the district court invoked 3553A2D, which is the rehabilitation language in 3553. So that was an error. That error is plain under this court's decision, well, several decisions, but the main decision was Thornton, United States v. Thornton. That's the case that makes it clear that any reliance on rehabilitation is sufficient to trigger error. It's also the case that talks about how the district court does not just have to tie the correctional treatment into a specific prison program. That's one way to violate the statute, but it's not the only way. And we think it's prejudicial here because Mr. Gray received a statutory maximum sentence, because the parties were recommending a lower sentence, and so it just— I have a question, Mr. Hansmeier. I've been doing this for 20 years, and I never really had the opportunity to explore this linguistic difference between 3553A2D, which does suggest that correctional treatment's a proper objective in the balancing, and then 3582 that says corrections is not inappropriate. How do you reconcile—what's the best way to reconcile that linguistic dilemma? Yes, I think the best way to reconcile it is that rehabilitation and correctional treatment can be considered for other things, such as what conditions of supervised release to impose, the length of the term of supervised release. I suppose you could— Potentially? I don't know about that. Maybe potentially vary downward for that basis. I'm not entirely sure about that. But there are definitely other components of the sentence where rehabilitation and correctional treatment are important. So that's how I would reconcile that. And I think that's what the Supreme Court did in Tapia and this court in Vaughan in other cases. How do you explain the form having a box to check, which if you check it, there is reversible error? I smirked for a minute and kind of thought that checking the box is reversible. I asked why the form, the government form, has a box, which if the judge checks, it's reversible error. So there is a reason. I think the reason for that is because when you look at the top of the form, this is page 34, the first section is the sentence that is imposed is, and then there is a box for above the guideline range, and then a box for below the guideline. So I think that, you know, if the box were a downward variance and the judge were to check the box or the 3553A2B box, then I don't think that would be in there. So I think that's why that's there. That makes sense. But I do want to just say, I think the checking of the box just confirms what happens at the hearing. We're not just here because the box is checked, but the fact that the box is checked does confirm that the error was made at sentencing. Well, when you say the error, are you saying that the sentence was increased to enable the defendant to get this type of treatment? Because it seemed to me that the judge, regardless of treatment, felt strongly that the defendant should receive the maximum statutory sentence. So I'm saying that it is clearly one reason for the 60-month sentence because the district court has told us it is one reason for the 60-month sentence. Now, it may not, it is, I agree with you that it is unclear how much weight the district court put into this, but I don't know that that matters because, you know, prejudice, when you're talking about sentencing error, I mean, even a day or a week in prison is prejudicial, and so if it is any part of the upper variance, we think that when it goes back, there is, you know, a reasonable probability, which is all we got to show, that the sentence would be lower, maybe a month, maybe two months, I have no idea, but we think it flows just logically as a matter of reason that if it is one basis and that basis goes away, that it is reasonably probable that the sentence will go down. I can talk about the second issue, too, because the 3582 error sort of blended into the second issue, which is just inadequate explanation. I think some inadequate explanation cases just turn on how much is said. This case is a little different in that we're sort of focusing on what was said and the inadequacies of what was said, and I think the briefing, I don't need to repeat all of it, but there were multiple things that were said that are not, you know, consistent with the law, essentially, and so we think, you know, when you have all of these things together, that this becomes a pretty easy case where the district court imposed a statutory maximum sentence well above the guideline range and made multiple errors with explaining the sentence, and this is preserved, which is rare for this type of issue, and so the case should go back. I'm happy to answer specific questions, but I really don't want to just read my brief remotely. Mr. Hazelwire, one question I did have is on the acceptance of responsibility box that was checked. Can't we all confidently recognize that that was just a clerical error? The judge obviously didn't think that she could, you know, vary, or I'm sorry, he couldn't vary upward because the defendant accepted responsibility. How do you respond to that? Yeah, that makes sense. I would hope the district court doesn't vary upward for someone's acceptance of responsibility, but I'm reading what he did, and that's what it says he did, and so I'm going to take it at face value, but beyond that, I think that when you're talking about the claim he raised here, when we're talking about the adequacy of the explanation, even if you want to call that a clerical error, that's not good, right? You did not demonstrate that this explanation was, you know, even coherent, and I do think for that reason as well, it is a basis to send this back. But I'm happy to reserve the remainder of my time for rebuttal if there are no further questions. Thank you, counsel. Mr. Magg. Good morning, Your Honors. May it please the Court, Jared Magg, on behalf of the United States in this particular case. Judge Temkevich, I want to address the same sort of concerns that the government had is how to reconcile A to D, and I think the answer to your question really is sort of twofold. I think the court in Long that we cite in our case had significant concerns about this very issue, that Tapia somehow lays a little bit of a trap for a judge to have to try to avoid using the terms rehabilitation and correctional treatment in trying to avoid any understanding that the increase in the sentence was based upon that alone. But I think the question is answered by what this court said in Thornton as well as Tapia, because in Thornton, this court made very, very clear that both causal relation and motivation are the two key factors to determine whether or not a judge increased the sentence based solely upon rehabilitation and correctional treatment. And I think when the court looks at the record here, it was not causally related. The increase was not causally related at all to treatment or correctional, and it certainly wasn't motivated. And I think, Judge Hartz, as you sort of alluded to, Judge Krause's concern here was the defendant's just horrible criminal history, and the fact that this was his fifth federal conviction, and that is really what motivated the court to increase above or increase it to the statutory maximum sentence of 60 months. At the same time, I think this court has to appreciate the unique posture in which this case comes to the court. You have a situation where both parties have already agreed to a sentence of variance four times higher than the low end of the guideline range. And so to some degree, the court's decision is informed by the party's own agreement that a sizable variance is justified in this case. The court simply went 12 months beyond that, adopting both what the parties had agreed to in their sentencing memorandums as well as the sentencing agreement. And if you look at both of those filed by the defendant, in large part, they are in agreement that all of the 3553A2 factors through A through C certainly qualify for a sizable variance here to 48 months. The fact that the court simply went 12 months beyond that, I think, is what puts this case in somewhat of a unique posture in the sense that many of the factors that the court looked at were agreed to by all the parties and the court. So in some sense, that is off the table, as it were, that it is decided that those factors were all necessary or worthy of the variance that was agreed upon in this case. Again, the fact that the court went to five times the lower end of the guideline range rather than four times is what the government and the defendant advised for. The transcript suggests that he was attributing the fentanyl in the vehicle to him. He was. And there's really nothing that links the drugs to him other than the passenger admitted, I think she admitted, that they were hers. Can he rely on the fentanyl under the passenger's seat as a basis for the sentence? It's clear that he believed that the fentanyl, at least as we read the record, and I think the defense certainly reads the record the same way, but we certainly don't read it in a way to suggest that it is attributable to him exclusively. The fact remains is it was found in the car he was driving under the seat. So in some sense, I think the court was viewing it as constructive possession. The problem was the issue, of course, was never fleshed out. The defendant objects to it only at the time of the sentencing. There is no hearing as to whether or not. Well, then doesn't the burden come on the government to try to show constructive possession? I think it would have under those circumstances. So to the degree that we didn't press the issue, I think the court is left with, in this case, the court, as you read his statement, seems to suggest, I understand your position, I just don't agree with it. When he was talking about the defendant's position that the drugs were not attributable to him. Well, that's not what he said. Not directly. He says, I understand your position, OK. And he says, and it's hard to know because the tone of that, from a cold record, it's hard to say whether or not he agreed with them to say, OK, I agree that it's not in his possession. I took it that he said, I understand your position, I don't agree with it because he does increase. But again, our position is that the increase was really more attributable to his criminal history, stating specifically, the reason I'm doing this is this is his fifth federal conviction. And so to attribute the increase to the drugs themselves, I think, is a bit of a stretch. I mean, particularly for abuse of discretion here. He could certainly disagree with the parties as to whether or not he believed that the drugs were attributable to him. I think it makes the, if he constructively possessed the drugs, that makes this case a more serious case in the court's eye. There's no evidence that would support a finding of constructive possession, at least on these facts. All we have is pro paquinity, closeness. Yeah, it's his car, he's driving it, drugs are in the car. And that's not enough. Under our case, that's not enough. Typically, no, it's not. So how do we know that his assumption of possessing illegal drugs, probably trafficking, because of the amount of them, how can we know that that didn't influence his additional 12 months sentencing? He's getting 12 more months for drug possession and 48 months for bad criminal history. How do we know? Yeah, Judge, I'd be constrained to concede that we don't on this cold record. I can't stand here and tell you that there's anything in the record that would suggest otherwise. It is a cold record on the issue. Why isn't that reversible? Well, I guess the hill that we're going to stand on here is the fact that he seemed to be very clear at the end of the day. When he says, I agree with what the party's variance is. However, I don't believe that 48 months is enough because, and then he gives the explanation, this is his fifth federal conviction. So to the degree that he acknowledges what is in the PSR, we believe, at least from this record, that his ultimate conclusion drew strictly on the fact that it was his fifth federal conviction. I thought you had said at the very start of answering Judge Tipovich's prior question, I may have misunderstood that he did in fact attribute the possession of the fentanyl to the defendant. Yeah, I think that he, as we read the record, we believe that he disagreed with the defendant's objection about... Because he possessed it. At least the court believed it, yes. And you're saying, well, and that's true because he constructively possessed it, right? I think that's a plausible reading. He doesn't say that I believe he constructively possessed it. It's very sort of vague in the discussion. I mean, if he possessed it, it was either constructive or actual. Right. And you're not suggesting, nobody's suggesting that he actually possessed it. It was under the woman's seat, right? It was under the woman's seat. And then you say, well, I'm going to defend that, I think, based on constructive possession, right? Yeah, I don't want to confuse the court. I think the court was exactly right. There were two options. I think it was constructive or it was regular. I don't think it's a distinction without a difference. And there's no way in the world, under Little, that there was anything in the PSR or that was presented to Judge Krause that suggested that the defendant had the intent to exercise dominion or control over the fentanyl under the woman's seat. Right, there was no evidence to suggest anything. And so, why have... I'm not trying to beat a dead horse, but how can we then say, okay, well, the judge was going to do this anyway. He relied on something that he shouldn't have, a possession of the fentanyl, but no big deal, you ought to affirm anyway. How do we do that? If the judge imposed a sentence based on something that was not even a plausible, reasonable, arguable fact, I mean, it's loose, but in some cases... I guess I'd push back a little bit and say that it's implausible. It is his car. He is driving it. The drugs are in the car. If that is insufficient in the court's mind, then I think, again, we're constrained to concede that that would be a problem under the circumstances. But at the end of the day... You'd say it's harmless error. Yeah, because at the end of the day, we believe that the court made it very clear what its biggest issue was, which was the defendant's criminal history. And at the end of the day, we think that it... Well, we can appreciate the court's concern about the lack of a full explanation or at least a clear explanation as to whether or not he definitively disagreed with defense counsel's argument. He simply makes a very sort of vague statement about that. And I don't disagree that that... It's not definitive, but at the end of the day, we do fall back on the harmlessness because we do think that the court, when it needed to be most definitive, simply said, look, this is why I'm doing this at the end of the day. Again, we hope the court appreciates the posture that this case comes to. It's very unique. It's certainly unique in the sense that both parties agreed to a substantial variance. The court simply went 12 months more. In the event that the court believes that that was insufficient, we understand that a remand for resentencing is certainly inappropriate under the circumstances, but we would ask the court to affirm based upon the court's more definitive statement about the defendant's criminal history. And unless the court has any questions, I'd forfeit the remainder of my time. Thank you. Thank you, Judge. Mr. Harnsmeyer? At least the court? I'll just pick up on that because I think the problem with saying even a fentanyl possession issue is harmless is sort of two-fold. One, the government is basically just charioting a good sentence out of a transcript, and they're just focusing on one thing and saying, ignore everything else. And I don't think that works. In my experience, that doesn't work. For defendants, I would hope it doesn't work for the government either. I mean, I think if the, obviously, if the district court had only said, I'm imposing the steps for maximum because of your criminal history and your fifth prior conviction, then this would be a half case. But that's not what happened. We had multiple errors and mistakes, and you know, when you talk about harmless error in this context, I mean, this was a case where the parties recommended a four-year sentence. He got more than that based on his mistakes. This is real time that this person is doing in prison. The fact that it could be better on remand is something that we should, I think, explore because, you know, if this goes back, maybe it's 55 months. You know, that's five months less than when he's serving in prison. And so I just, I don't think the harmless error analysis works in the way the government's suggesting. We can just find one basis that is going to solve so many problems, and that's what the district court said. I don't want to circle back to the top here to judge Tim for this question because I looked at the statute while Mr. Maggard was arguing, and I do think, so the thing that the 3553A language that stuck out to me, the idea of maybe like a split sentence, a court could say, you know, I'm only going to give you like a year and a day in prison, and then you're going to do some sort of supervised release term where you are going to have to do treatment. That to me makes sense when you do 3553A2B and that's consistent with 3583A2A. Although, you know, it does say, it says the court shall consider the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. And in this case, I know we have a lot of problems with the sentencing form, but he did check, somebody checked the box for 3553A2D, you know, which suggests that's what the language was referring to. What's your take on that? I mean, I don't dispute that, but I think that is the tabular error. I think that's the exact error in Tapia and Gordon Powell's case. In fact, that's the statutory provision that courts cite, and that's the error because you can't cite that provision to impose a longer prison sentence. Your time has expired. I asked you to speak slowly so I'm going to be liberal with your time, but I assume you're completed and done with this. Are there any other questions? Cases submitted and counts are excused. Good luck with your COVID. Yeah.